UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES A. BENSON, | |
| Petitioner, | |
| v. | CAUSE NO. 3:18-CV-670-DRL-MGG |
| WARDEN, | |
| Respondent. | |

OPINION & ORDER

Charles A. Benson, a prisoner without a lawyer, filed a habeas corpus petition challenging the prison disciplinary hearing (MCF 18-06-0073) in which a Disciplinary Hearing Officer (DHO) found him guilty of violating Indiana Department of Correction policy A-102. ECF 1 at 1; ECF 12-3. As a result, the DHO recommend that he be sanctioned with the loss of 180 days earned credit time and be demoted in credit class. *Id.* The Warden has filed the administrative record. ECF 12; ECF 15. Mr. Benson filed a traverse. ECF 20. Thus, this case is now fully briefed.

On June 5, 2018, Officer Wagoner wrote a conduct report charging Mr. Benson with violating offense A-102,[1] which prohibits:

> Knowingly or intentionally touching another person in a rude, insolent, or angry manner; or in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person.

ECF 12-6 at 1. The conduct report states:

> On Tuesday, June 5, 2018, at approximately 4:30 pm, I Officer Wagoner #749, was assisting Officer Harrington [sic-Herrington] shut the water off to cell 801 belonging

---

[1] Throughout the various documents, the offense is referred to as either "assault" or "battery." However, it is undisputed that Mr. Benson was found guilty of Offense A-102. The 2015 version of the Adult Disciplinary Code for Adult Offenders called Offense A-102 "assault/battery," whereas the 2018 version, which took effect the day prior to the incident giving rise to the charge in this case, calls Offense A-102 a "battery." *See* Disciplinary Code for Adult Offenders, Policy & Administrative Procedures App'x I (effective June 4, 2018); Disciplinary Code for Adult Offenders, Policy & Administrative Procedures App'x I (effective June 1, 2015). The definition of the offense has remained the same.

> to Offender Benson, Charles, when I noticed Offender Benson take a cup of an unidentified liquid and throw it out of his cell striking Officer Harrington [sic] and myself in the face, shoulder, back and leg.

ECF 12-1. Officer Herrington provided a witness statement regarding the incident as well:

> On 6-5-18 at approximately 4:30 PM I, Officer B. Herrington was on post in RHU. I was shutting the water off for cell 801 when Offender Benson, Charles #202702 tossed an unknown liquid through the crack in his door striking myself in the arm and top of my head. The unknown liquid also struck Officer J. Wagoner in the face, shoulder and leg.

ECF 1-1 at 7.

On June 7, 2018, Mr. Benson was notified of the charge when he was served with the conduct report and screening report. ECF 12-2. He pleaded not guilty and requested the assistance of a lay advocate, witness statements from Offender Sims and the offender housed in cell 809, and DVR video review of the incident. *Id.* The request for DVR review was denied because the camera did not capture the area where the incident occurred. *Id.*; *see also* ECF 12-3. However, the requests for witness statements were granted. Offender Sims provided the following written statement:

> On the date of said incident I was looking down the range toward Mr. Benson's door, Officer Wagner [sic-Wagoner] was not even standing near Mr. Benson's door to 'get hit or splashed with water.' If Officer Wagner [sic] got 'hit or splashed' with any water it was due to Officer Petty who came up to the 800 range and stated that Officer Wagner [sic] 'wasn't doing it right' then began to recklessly and forcefully shove water into cells and up against the walls which caused water to splash into cells and all around the range. I then witnessed Officer Wagner [sic] and Officer Harington [sic-Herrington] stop in front of my door before leaving the range. Officer Harrington [sic] stated to Officer Wagner [sic] 'I will do the paperwork. I can write it up so he won't get off all you have to do is sign it.'

ECF 1-1 at 6. Offender Carteaux—the offender housed in cell 809— testified by written statement that, "Officer Petty was squeegeeing water back into Benson's cell." *Id.* at 4.

On June 8, 2018, the DHO held Mr. Benson's hearing. ECF 12-3. The DHO noted that Mr. Benson did not request a continuance and that he had reiterated his not guilty plea. *Id.* After

2

considering the evidence—including the staff reports, Mr. Benson's statement,[2] and the evidence from the witnesses—the DHO found Mr. Benson guilty of violating offense A-102. *Id.* The DHO listed the conduct report and the witness statement from the staff as reasons for the decision. *Id.*

For part of his sanctions, Mr. Benson was demoted in credit class. *Id.* The DHO also recommended that he be sanctioned with the loss of 180 days earned credit time, but that recommendation was crossed out with the notation that there was "no time to take." *Id.* The DHO noted that the sanctions were imposed due to the seriousness of the offense, the offender's attitude and demeanor during the hearing, and the likelihood of the sanction having a corrective effect on Mr. Benson's future behavior. *Id.*

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the factfinder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass Corr Inst. v. Hill*, 472 U.S. 445, 454 (1985). Construed generously, Mr. Benson raises four issues in his petition: (1) that the evidence was insufficient; (2) that he was denied an impartial hearing officer; (3) that the DHO improperly denied his request to submit additional evidence; and (4) that the disciplinary action was retaliatory.

To begin, Mr. Benson argues that there was insufficient evidence to find him guilty. In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

---

[2] Mr. Benson asked, "How can the officer get hit in the face and back at the same time when he is standing at my cell window watching me?" ECF 12-3.

3

"In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted). In other words, "[p]rison disciplinary boards are entitled to resolve conflicts in the stories presented to them, as long as 'some evidence' supports the decision." *Johnson v. Finnan*, 467 F.3d 693, 695 (7th Cir. 2006) (citation omitted).

Here, there were conflicting accounts of the incident presented by Mr. Benson and prison staff. Mr. Benson's account—and that of his witnesses—was that another correctional officer got water on Officer Wagoner and Officer Herrington, whereas the officers attested that it was Mr. Benson who threw liquid on them. The DHO considered all of the witness statements, including those submitted by Mr. Benson, and chose to believe the officers. Their account constitutes some evidence to support the DHO's finding. Mr. Benson argues in his petition and traverse that Officer Wagoner could not possibly have seen him throw the water and been splashed with it (on both his front and back) from where he was standing. He also argues that the statement is inconsistent with the facts Mr. Benson himself presented to the DHO and with Officer Herrington's statement.[3] However, these arguments improperly invite the court to reweigh the evidence. The court is not "required to conduct

---

[3] He does not specifically explain how the officers' statements are allegedly inconsistent with each other. They are not inconsistent on their face.

4

an examination of the entire record, independently assess witness credibility, or weigh the evidence." *McPherson*, 188 F.3d at 786. Rather, it is the court's role to determine if the hearing officer's decision to revoke good time credits has some factual basis. *Id.* Here, the DHO considered the evidence and logically concluded that Mr. Benson battered Officer Wagoner when he became upset and threw a cup of liquid out of his cell at the officers.[4] That analysis was sufficient. Thus, the DHO's finding was neither arbitrary nor unreasonable in light of the facts presented in this case, so this ground does not state a basis for habeas corpus relief. *See Hill*, 472 U.S. at 457 (due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board").

Next, Mr. Benson argues that he was denied an impartial decisionmaker. Prison adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (citations omitted). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decisionmaker in the case. *Id.* at 667. However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.* at 666–67.

There is nothing in the record to indicate that the DHO was involved in any way in the events underlying the charge. Nevertheless, Mr. Benson claims that the hearing officer was biased because he told Mr. Benson, "I understand and I see, but I'm just doing my job . . . my hands are tied," and "I'm just following orders" in response to Mr. Benson's explanation of what had occurred in light of a photograph in another disciplinary case. ECF 20-1 at 8. These statements are vague; and, for all they

---

[4] In his traverse, Mr. Benson explains that, on the date of this incident, several inmates had intentionally flooded the range with toilet water. ECF 20-1 at 2–3. Mr. Benson denies throwing liquid on the officers, but he acknowledges that he was upset that one of the officers was pushing water under his cell door. *Id.* at 3. Moreover, the use of the word "throw" in Officer Wagoner's conduct report supports the conclusion that the act was intentional rather than accidental.

5

reveal, the DHO was referring to his duty to find an inmate guilty based on the evidence in the case before him, even if he is personally sympathetic to his arguments. Additionally, the DHO submitted a sworn affidavit denying that he ever made such a statement to Mr. Benson, and Mr. Benson has not submitted any counter-affidavits in response. *See* ECF 12-5. Thus, Mr. Benson has not overcome the presumption that the hearing officer was impartial, so this ground does not state a basis for habeas corpus relief. *See Wilson-El v. Finnan*, 281 F. Appx. 589, 592 (7th Cir. 2008) (finding the inmate's claim unpersuasive because he presented "no documentary or other evidence to support his allegation that a board member made such statements.").[5]

Mr. Benson also argues that that the DHO improperly denied his request to present additional evidence. He claims that, on the day of the hearing, he had a brief conversation with Officer Wagoner by his cell during which Officer Wagoner told him that he "never stated some of the things I addressed with him from my conduct report in his incident report." ECF 1 at 2. Mr. Benson alleges he brought up the issue with the DHO at the "commencement" of the hearing later that day and requested additional time to produce the incident report as evidence. ECF 20-1 at 9. According to Mr. Benson, the DHO "stated it was confidential and denied Benson's request without any indication of Benson's request or documentation of his denial." *Id.*

A prisoner has a right to call witnesses and present documentary evidence in a prison disciplinary proceeding. *Wolff*, 418 U.S. at 566. At the time he was screened for this charge, he requested witness testimony from two offenders and DVR evidence. While the request for DVR evidence was denied because it did not exist, his request for witnesses was granted—the written

---

[5] Furthermore, to the extent Mr. Benson argues that the DHO had "his mind made up" (ECF 20-1 at 8) and found him guilty based on insufficient evidence and despite being aware of evidence to the contrary, this argument is unavailing as adverse rulings are insufficient to demonstrate improper bias. *See Thomas v. Reese*, 787 F.3d 845, 849 (7th Cir. 2015) (rejecting unsupported argument that the judge had "personal knowledge of disputed evidentiary facts" and noting that, "When a judge decides a contested issue, whether correctly or not, at least one side will be disappointed. Adverse rulings do not constitute evidence of judicial bias.").

statements of Offender Sims and Offender Carteaux were ultimately entered into evidence. Thus, Mr. Benson's right to present evidence was satisfied. Although Mr. Benson now claims he requested additional evidence during the hearing—in the form of an incident report that would have allegedly contradicted Officer Wagoner's conduct report—the DHO provided a sworn affidavit attesting that Mr. Benson did not make any such request nor ask for a continuance regarding the matter. *See* ECF 12-5. This is consistent with the Report of Disciplinary Hearing form that was signed by Mr. Benson and on which it was noted that a continuance had not been requested. ECF 12-3. Of note, Mr. Benson did not provide any counter-affidavits in response. Moreover, even if he did make the request during the hearing, at that point it was untimely so the DHO would not have erred in declining it. *See Miller*, 963 F.2d at 1004 n.2 (prisoners "certainly cannot wait until the day of the hearing" to make an evidentiary request); *Hamilton v. O'Leary*, 976 F.2d 341, 346-47 (7th Cir. 1992) (due process is not denied when prison officials deny untimely requests for evidence made during a hearing); *Portee v. Vannatta*, 105 F. App'x 855, 857 (7th Cir. 2004) ("Although inmates have a constitutional right to call witnesses at disciplinary hearings, this right is limited and requests that inmates make the day of the hearing are not timely.") (internal citation omitted).[6]

Mr. Benson would also have to establish that the denial of any evidence resulted in actual prejudice rather than harmless error. *Piggie,* 342 F.3d at 666. Inmates have a right to present relevant, exculpatory evidence in their defense. *Miller v. Duckworth*, 963 F.2d 1002, 1005 (7th Cir. 1992).

---

[6] While Mr. Benson argues in his traverse that he should have been allowed to see the incident reports, he did not necessarily have the right to review the evidence personally even if the request had been timely made and they had been admitted. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001) ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . ."). This is particularly true where the disclosure of the evidence could potentially jeopardize prison security. *Id.* at 768. According to the Warden, the incident reports are facility and human resources forms which contain confidential information about the participants. *See* ECF 14; ECF 15 at 34; ECF 15-1. The court has reviewed the reports and agrees with this assessment. Therefore, to the extent Mr. Benson is arguing his rights were violated because he was not allowed to review the confidential incident report forms, this is not a basis for habeas relief.

Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). In his traverse, Mr. Benson states that the incident reports "could prove inconsistency in Wagoner's [conduct] reports" and be contradictory to Officer Herrington's account of events. ECF 20-1 at 9. He alleges that Officer Wagoner told him he "didn't say that" when questioned about the reports. *Id.* These vague allegations do not provide details as to how the accounts differ, nor does Mr. Benson provide specifics as to what Officer Wagoner allegedly said was inaccurate in his conduct report. The court has reviewed the confidential incident reports provided by the Warden. *See* ECF 15 at 34; ECF 15-1. Nothing in them contradicts the DHO's ultimate finding that Mr. Benson committed battery by throwing liquid out of his cell which landed on Officer Wagoner and Officer Herrington. Furthermore, to the extent Mr. Benson envisioned calling Officer Wagoner "as an adverse witness in order to question the basis for his conduct report, [the court] note[s] that he had no right to confront or cross-examine adverse witnesses in his disciplinary proceeding." *Piggie*, 342 F.3d at 666. Accordingly, because Mr. Benson cannot show that the denial of any evidence actually harmed his defense or that there was a substantial and injurious effect on the outcome of his disciplinary hearing, this ground does not state a basis for granting habeas corpus relief.

Finally, Mr. Benson argues that he is entitled to habeas relief because the charges were brought in retaliation for filing grievances against correctional staff. Regardless of whether this issue was procedurally defaulted as the Warden suggests, "[r]etaliatory motive in the filing of a disciplinary charge is not a ground for relief if the subsequent disciplinary proceedings are held in accordance with due process." *Lee v. Berge*, 14 F. Appx. 690, 693 (7th Cir. 2001) (citing *McPherson*, 188 F.3d at 787). As noted above, the DHO had "some evidence" for the decision, and Mr. Benson has not shown that any of the procedural due process protections described in *Wolff* were violated. Consequently, this argument is not a basis for habeas relief.

Accordingly, Mr. Benson has failed to identify any basis for granting habeas corpus relief in this case. If Mr. Benson wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court*, 569 F. 3d 665, 666 (7th Cir. 2009). However, he may not proceed *in forma pauperis* on appeal because pursuant to 28 U.S.C. § 1915(a)(3) an appeal in this case could not be taken in good faith.

For these reasons, the court:

(1) DENIES the petition for writ of habeas corpus (ECF 1);

(2) DENIES AS MOOT the motion requesting status on case (ECF 26);

(3) DENIES AS MOOT the motion requesting a ruling on the petition (ECF 28);

(4) DENIES AS MOOT the motion seeking judgment (ECF 30);

(5) DENIES Charles A. Benson leave to proceed *in forma pauperis* on appeal; and

(6) DIRECTS the clerk to enter judgment and close this case.

SO ORDERED.

September 28, 2020                              *s/ Damon R. Leichty*
                                                Judge, United States District Court